**STRICK CORPORATION**

v.

**The UNITED STATES.**

No. 503–77.

United States Court of Claims.

April 2, 1980.

⬤➼1970

Mervin M. Wilf, Philadelphia, Pa., attorney of record, for plaintiff. Hudson, Wilf & Kronfeld and Rawle & Henderson, Philadelphia, Pa., of counsel.

Michael J. Dennis, with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS and KUNZIG, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND ANCILLARY MOTIONS

DAVIS, Judge.

We have before us the parties' complicated cross-motions for summary judgment in this suit for refund of excise taxes, as well as a number of ancillary motions. Oral argument has been had, and the court has also considered the extensive and contentious written submissions. Plaintiff is a manufacturer of truck trailers, and the excise taxes now involved are those on trailers (Internal Revenue Code § 4061) and on the tires included on the vehicles as sold (Internal Revenue Code § 4071). The tax year is 1971. The petition is in three counts which we shall consider separately. Because this is an interlocutory decision and it would lengthen the opinion unduly and unnecessarily if we were to spell out the full procedural history, as well as all aspects and facets of the litigation, the statutes, and the regulations, we limit ourselves to the barebones needed for the disposition we make at this time.

*Count One—the tax on the trailers*

A. The first count of the petition concerns the tax on the trailers. For 1971 (and until the statute was amended in 1978) the Internal Revenue Service's requirement was that, for sellers at retail like plaintiff,

the basis for the tax would be 75% of the retail price or the manufacturers' cost, whichever was higher. *See Hamrick v. United States*, 218 Ct.Cl. ——, 585 F.2d 1015, 1018 (1978). For 1971 plaintiff calculated the tax on the basis of its cost of manufacture. In the petition as originally filed, taxpayer claimed only that the IRS incorrectly required it to include, in determining its cost of manufacture, certain interest expense on corporate indebtedness.

On this issue the cross-motions for summary judgment show that a trial is necessary, and that it would be wholly inappropriate for us to decide the question at this time. Each side has filed somewhat conclusory and ambiguous affidavits by accounting experts who take opposite positions on whether the pertinent regulations, revenue rulings, and "accepted accounting practice" call for or envisage inclusion in cost (for present purposes) of the disputed interest expense. It would be incorrect for us to try to decide now between these apparently contradictory views. The experts should be subject to examination and cross-examination and the trial judge should make a determination in the light of that fuller probing and expanded record. On this point, then, the cross-motions for summary judgment have both to be denied without prejudice.

B. After defendant had filed its motion for summary judgment on the above issue (and others in the case), taxpayer amended Count One to assert the alternative and broader theory that the governing statute (I.R.C. § 4216(b)(1)), as in effect for 1971, did not permit the IRS to base the excise tax at all on the manufacturer's cost for the taxable article.[1] Defendant urges that we are barred from considering this alternative theory of recovery because it was not included in taxpayer's refund claim to the Service. On this ground defendant has moved to dismiss taxpayer's first amendment to the petition.

We concur that the alternative theory was not raised or suggested in plaintiff's refund claim. The portion of that claim devoted to the tax on trailers (i. e., the tax dealt with in Count One of the petition) was wholly centered on the asserted overpayment because interest expense was included by the IRS in the cost formula. The refund claim explained that taxpayer computed the tax on its standard costs, in accordance with the prevailing revenue ruling; that the examining agent "did not contest taxpayer's eligibility to use such method, but increased taxpayer's cost calculation by including in such base the taxpayer's interest expense on its corporate indebtedness"; that such interest expense is not an item properly includable in its cost in computing the tax in accordance with the revenue ruling; and that "the interest expense here involved does not fall within the category of manufacturer's cost under generally accepted accounting principles." The conclusion of this segment of the refund claim stated: "For these reasons, taxpayer submits that its interest expense is not includable in computing its manufacturers cost basis." The refund sought was limited to $59,810, the amount of increased tax due to the inclusion in cost of the interest expense.

It is plain to us that this refund claim stated only the one ground that interest expense should not be included in the cost computation, and that the much broader ground now sought to be asserted—that any cost-basis formula for computation of the tax is invalid—is at "substantial variance" with the only ground presented or intimated in the refund claim. *See, e. g., Cook v. United States*, 220 Ct.Cl. ——, 599 F.2d 400, 406 (1979). No "adequate notice" was given to the Service of the broad new ground, which we are certain neither the

---

1. Taxpayer's amendment came at about the same time as Congress (in October 1978) amended § 4216(b)(1) to eliminate for the future the use of this cost-floor method in computing the base for the excise tax. The Senate Committee report on this legislation (S.Rep.No. 95-1127, 95th Cong., 2d Sess., 4 (1978)) states

that "no inference [is to] be drawn from this legislative action with regard to controversies between taxpayers and the Service concerning either the validity of the cost floor rule or determinations of cost for taxable transactions which occurred before the effective date of this legislation."

Service nor anyone else would consider, or have reason to consider, as included in the claim as narrowly submitted. *Id.*

Taxpayer asserts that "adequate notice" was in fact given because the core of plaintiff's opposition to the entire cost-basis method is that it discriminates against taxpayers in the plaintiff's position, and that the refund claim in question affirmatively raised the problem of discrimination. The fact is, however, that the refund claim dealt with discrimination only in the very restricted context of the inclusion of interest in a cost-basis computation. Taxpayer said no more than that inclusion of interest would discriminate against manufacturers who are compelled to borrow to finance their operations, in favor of those who do not have to borrow. Invoking the concept of discrimination in that isolated a focus is a far cry from raising, as plaintiff now does, general discrimination against low-profit margin manufacturers (selling at retail) as the basic ground for voiding the entire cost-basis method.

■ For this reason—that plaintiff's new contention varies substantially from the refund claim—defendant's motion to dismiss the first amendment to the petition must be granted, and that new contention need not be considered in this litigation.

### Count Two—the tire tax

Count Two relates to a claim for refund of excise tax on tires. These tires were made by the Firestone Rubber Company which paid the excise tax (IRC § 4071) and sold them to plaintiff [2] for use on over 3,000 semitrailers purchased by the Army (under a 1967 contract) from Strick. A substantial number of these semitrailers (including the tires) were later exported by the Army.

The Internal Revenue Code (IRC § 4221) remits the excise tax on exported tires. Having unsuccessfully sought administrative credit or refund of the excise tax on the exported tires, Strick now seeks a refund from this court. On this aspect of the case the parties' motions for summary judgment present two prime issues: *first*, is Strick the proper party to obtain the refund of the tax on the exported tires, and, *second*, if so, is its claim barred by limitations?

A. *Taxpayer as proper party to obtain refund*: With respect to the issue of whether taxpayer is the proper party to obtain the refund,[3] defendant argues that the Internal Revenue Code bars a refund to an entity in plaintiff's position if it has passed on the tire tax to the consumer and that plaintiff is thus barred because it passed on the tax to the Army (the purchaser of the semitrailers). To this plaintiff makes four separate responses: (1) it did not in fact pass on the tire tax to the Army; (2) even if it did, a general settlement agreement with the Army of claims under the semitrailer contract released to plaintiff any claim by the Army for refund of the tire tax; (3) an IRS technical advice memorandum, said to be binding on the Government, specifically ruled that Strick is the proper party to receive the refund of the tire tax; and (4) for secondary manufacturers in plaintiff's particular position, the text of the Code itself permits a refund even if the tax has been passed on to the ultimate consumer.

The first two of these contentions we cannot decide at this time; there will have to be a further inquiry into or ascertainment of the facts.[4] (On these two factual

2. Firestone's price to Strick for the tires included the tire tax.

3. We have no doubt that this question is properly before the court in this refund suit, having been raised by defendant in its first brief and plaintiff having had full opportunity to respond to it. *See Erickson v. United States*, 159 Ct.Cl. 202, 209–10, 309 F.2d 760, 764 (1962).

4. We do not have any figures relating to the make-up of the price charged the Army by plaintiff or information whether or not the tire tax was actually included in that price. Defendant's arguments show no more than that *the tax was supposed to be included.* On the settlement issue, defendant admits that there is an issue to be ventilated further if the court considers, as we do, that the settlement agreement may be relevant to the question of taxpayer's right to recover the tire tax.

or quasi-factual issues plaintiff bears the ultimate burden.) We are, however, ready to determine the legal questions reflected in the third and fourth points.

*IRS technical advice memorandum* : The legal problem of whether Strick is the proper party to seek the tire tax refund is complicated by the juxtaposition of two provisions of the Code which can be read to look in opposite directions. Section 6416(b)(3)(C) provides that if a tire is sold by a "subsequent manufacturer" (like taxpayer) on or in connection with the sale of another article manufactured by the subsequent manufacturer (here, the semitrailer) and the latter article is then exported, the subsequent manufacturer shall be considered as having made an overpayment of the tire tax and entitled to credit or refund.[5] The other provision is § 6416(a)(1), a general subsection on credit or refund of a number of excise taxes, which can be interpreted as requiring that, to receive a refund for overpayment of the tire tax, the claimant must always show that (1) he did not include the tax in the price of the article sold and did not collect it from the purchaser, or (2) he repaid the amount of the tax to the purchaser, or (3) he has filed with the Treasury Department the written consent of the purchaser to an allowance to the claimant of the refund.

The interrelationship of these tax provisions seems to have raised some question in the local office of the IRS concerned with Strick's claim for credit or refund of the tire tax (after the semitrailers were exported). That office sought advice from the National Office of the IRS on the basis of a Statement of Facts which plainly and expressly raised the issue of the applicability of § 6416(a) in regard to the allowance of a credit under § 6416(b)(3)(C). Taxpayer added its written comment specifically asserting that § 6416(a)(1) was inapplicable and that Strick should receive a refund directly under § 6416(b)(3)(C), without regard to its satisfaction of the requirements of § 6416(a)(1).

The National Office then issued a Technical Advice Memorandum which simply concluded (on this issue): "Strick Corporation is the proper party to seek a refund or credit of the tire tax." Pursuant, apparently, to this Memorandum the local office refunded to Strick the part of the tire tax not considered as barred by limitations. Taxpayer now says that the Memorandum—which taxpayer construes as answering the entire question posed by the local office and by Strick—is binding on the Government in this litigation. The Government, strongly seconded by the IRS, stoutly maintains that, despite the way in which the problem was presented to it, all that the National Office decided in the Memorandum was that Strick fell within the provisions of § 6416(b)(3)(C), and that the Memorandum did not at all cover the separate issue of the application of § 6416(a)(1). There is support for this position in the complete failure of the Memorandum to cite or refer in any way to § 6416(a); the whole thrust of the document is on § 6416(b)(3)(C) which the Memorandum holds to fit the facts of plaintiff's situation.

Although there does seem in this instance to have been a slip between the cup and the lip, we accept, with some wonderment how the gap could have occurred, the Government's position as to the very limited coverage of the Memorandum, as the National Office intended it. We are reluctant to construe the Memorandum as silently dealing with a point and a statutory provision it does not mention or touch upon—even though we are clear that the National Office was specifically asked to consider that omitted aspect. On the Government's limited view, the Memorandum presents no problem in this litigation since no one now contends that Strick fails to meet the criteria of § 6416(b)(3)(C). Conversely, the Memorandum does not aid plaintiff in overcoming the hurdle of § 6416(a)(1), which defendant does raise before us.

---

**5.** Nothing is said in § 6416(b)(3)(C) itself about the "subsequent manufacturer" having borne or passed on the tax.

■ *Passing on of the tax as a bar to suit* : As we have just said, the only controverted legal issue on this phase of the case is whether § 6416(a)(1) bars plaintiff if it has passed on the tire tax to the Army (or failed to obtain from the Army a release of the latter's right to recover the tax). The regulations declare that § 6416(a)(1) must be satisfied. Treas.Reg. § 48.6416(a)–1(d)(2)(i) makes it explicit that a person entitled to recover a tire tax under § 6416(b)(3)(C) must also comply with the provisions of § 6416(a)(1). This directive harmonizes with the purpose of § 6416(a)(1), as revealed by its legislative history. Both Committee reports declared that the objective of the latter provision was "to insure that any credit or refund made will inure to the benefit of the person who actually bore the burden of the tax involved" (H.R.Rep. No.481, 85th Cong., 1st Sess. 69 (1957), *reprinted in* 1958–3 Cum.Bull. 372, 440; S.Rep.No.2090, 85th Cong., 2d Sess. 69 (1958), *reprinted in* 1958–3 Cum.Bull. 584, 652).

Do the regulations comply with the Code in this instance? Under the assumption on which we proceed at this stage of the case—that Strick passed on the tire tax to the Army and the Army has not released to Strick its right to recover—it is undeniable that plaintiff fails to comply with three of the four alternative requirements of § 6416(a)(1).[6] Strick urges, however, that it fits within § 6416(a)(1)(C) which declares (with respect to an overpayment under § 6416(b)(3)(C), a provision which concededly applies to plaintiff) that the refund claimant is eligible if it has repaid or agreed to repay the tax to the "ultimate vendor" of the article or has obtained the "ultimate vendor's" consent to the refund. Strick says that it is the "ultimate vendor" of the semitrailers-plus-tires to the purchaser (the Army), and that it has in effect obtained its own consent to the refund of the tire tax.

We find this interpretation inadmissible although at first it may seem to fall within the literal language of § 6416(a)(1)(C). What Congress had in mind, we think, is an "ultimate vendor" *other* than the "subsequent manufacturer" covered by § 6416(b)(3)(C). (An example of such an "ultimate vendor" would be an automobile or motor vehicle distributor to whom a manufacturer of vehicles sold them, already equipped with tires obtained from a tire maker.) Congress did not intend to cover this extraordinary case in which the "subsequent manufacturer" happens also to be an ultimate vendor to the ultimate purchaser. If Congress had had such a purpose, it would have created inexplicable disharmonies between (1) a primary manufacturer like Firestone (which would have to comply with one or another of the segments of § 6416(a)(1)) and a "subsequent manufacturer" like Strick (which could recover even though it passed on the whole tax and its purchaser wanted the recovery), and (2) "subsequent manufacturers" which sell to other vendors (*e. g.*, distributors) and those (like Strick) who happen to sell directly to the ultimate purchaser. In the light of the overall purpose of § 6416(a)(1) to grant refunds only to those who have borne the tax or who obtain the consent of the persons who have, we cannot attribute such groundless distinctions to Congress or to the statute.

Accordingly, plaintiff must show, in order to recover, either that it did not pass the tax on to the Army or that the Army has released to Strick its right to recover the tax. As we have already indicated, this is part of plaintiff's case under § 6416 and the burden of proof and persuasion is its.

■ B. *Limitations* : Defendant also raises the independent defense that, in any event, taxpayer's tire tax claim is barred for failure timely to file a refund claim or to seek a credit. The parties spin various theories as to why this is so or not, but we need consider only plaintiff's latest proposi-

---

**6.** These are § 6416(a)(1)(A), (B), and (D), which cover (1) noninclusion of the tax in the price to the purchaser and noncollection of the tax from the purchaser, (2) repayment of the tax to the ultimate purchaser, and (3) written consent from the purchaser to the allowance of the claimed credit or refund.

tion. In its second amendment to the petition (filed July 23, 1979) Strick asserted that its refund claims (for the tire taxes) were timely because (a) IRS and Firestone (the tire-maker and payor of the tax) had extended Firestone's limitations period for refund or credit of those excise taxes to and including July 31, 1979; (b) plaintiff as a "subsequent manufacturer" stands in Firestone's shoes and is entitled to the latter's period of limitations; and (c) plaintiff filed its refund and credit claims well before July 31, 1979. The Government has moved to dismiss this amendment to the petition on the two distinct bases that this new contention (1) was not adequately raised in Strick's refund claims for the additional taxes assessed and paid because the IRS considered that some of plaintiff's previous demands for a credit had not been timely, and that (2) substantively, the extension of Firestone's limitations period does not extend to plaintiff. We reject both positions.

1. On the refund claim the defendant's point is that plaintiff raised two other, very specific, reasons (relating to limitations) why its demand for the refund should be allowed, and also assumed that Firestone's period for seeking a refund had expired before Strick sought its credit for the excise taxes on the exported semitrailers. On the other hand, the Government says that the new contention is nowhere suggested in the refund claim. This argument that the ground stated in the second amendment to the petition cannot be considered because it was not included in or covered by the refund claim is based by the Government on the conventional formulation of the rule against a "substantial variance" (*see, e. g., Union Pacific R.R. v. United States*, 182

Ct.Cl. 103, 108–09, 389 F.2d 437, 442 (1968)). But that general formulation is not wholly apt for a case like this in which (a) the new ground rests on a fact (the Firestone-IRS agreement to extend Firestone's period for filing refund claims) not actually known to Strick until April 1979, long after the refund claim was filed and denied;[7] (b) that newly-discovered fact consists of tax agreements of the IRS with the tire manufacturer, which agreements were of course known to the IRS and in its own files; (c) although the refund claim did not specifically name Firestone it did refer several times to the tire manufacturer and it seems almost certain that the IRS agents handling the refund claim knew that Firestone was the tire manufacturer in this instance; (d) the agents could easily have discovered whether or not Firestone's time for filing refund claims had expired or had been extended; (e) Strick was not in a good position to ascertain that fact and accordingly assumed inaccurately (as its refund claim shows) that Firestone's time had not been extended,[8] and that if Strick were controlled by Firestone's limitation period plaintiff would also be barred; and (f) for this very reason Strick's refund claim urged vigorously that it was *not* tied to Firestone's limitations period.

In these circumstances, plaintiff's great stress on the unfairness of applying to it Firestone's normal limitations period[9] should have alerted the IRS to the possibility that Firestone's period might have been extended. The Service's stand was squarely that Firestone's period applied to plaintiff, and there was surely a fair chance that that period had been extended. The Ser-

---

**7.** Plaintiff asserts that it first became aware of the extension agreements on April 16, 1979. Defendant does not contest this assertion.

**8.** This assumption that Firestone's time had not been extended is quite different from the taxpayer's insistence in *Cook v. United States, supra*, 220 Ct.Cl. at ——, 599 F.2d at 406–07, that the IRS accept the figures and factual representations contained in his own tax returns. Here, the assumption was not a representation within Strick's own knowledge or concerning its own affairs nor did Strick insist that the IRS accept the assumption even if it

turned out to be incorrect. Plaintiff simply made an assumption contrary to its own interest simply because it then believed it to be true.

**9.** Strick never accepted the proposition that Firestone's normal limitation period should be applied to it but argued, as we have suggested, that limitations began to run for it at a later date. It contended that it did not learn until December 1969 that the semitrailers had been exported and not until some time thereafter did it receive the required proof of export.

vice could, of course, have refused to apply that extension to plaintiff—as defendant argues here, *see infra*—but there was the strongest likelihood that Strick would have taken the other view if it had known of the extensions, and the Service should have been prepared to consider the problem. We think therefore that the issue presented in taxpayer's second amendment "is not a surprise or totally novel claim of which the Service was unaware" (*Cook v. United States, supra,* 220 Ct.Cl. at ——, 599 F.2d at 408), but instead that it was adequately "communicated to the Service" (*see Union Pacific R.R. v. United States, supra,* 182 Ct.Cl. at 113, 389 F.2d at 444–45) in the special situation of this case.

2. On the merits of the limitations issue, defendant urges that the general rule of I.R.C. § 6511(a) controls both plaintiff and Firestone. Under that provision, the Government says any claim for credit or refund due to exportation of the tires had to be filed within 3 years from Firestone's filing of its excise tax returns or 2 years from the time Firestone paid the tax, whichever period expired later.[10] Although defendant thus links plaintiff to Firestone's normal limitations period, it is unwilling to recognize any benefit to Strick from the extension of Firestone's period made by § 6511(c) by virtue of the IRS–Firestone extension agreement.

This is an unusual case in which plaintiff did not pay, or file a return on, the tire excise tax but only later became, by force of the "subsequent manufacturer" provision of § 6416(b)(3)(C), entitled to seek a refund or credit of that tax (if other conditions were fulfilled) after the tires were exported as part of the semitrailers. For a special

claimant like plaintiff the terms of § 6511(a) do not fit well. The section refers to a claim for overpayment of a tax "in respect of which tax *the taxpayer* is required to file a return" (emphasis added) and declares that such a claim must be filed "by *the taxpayer* within 3 years from the time the return was filed or 2 years from the time the tax was paid" (emphasis added). Those provisions seem to refer to the taxpayer who filed the return or paid the tax (and was required to file the return and pay the tax). True, § 6511(a) goes on to cover the case in which "no return was filed by the taxpayer," providing a limitations period of "2 years from the time the tax was paid." But even these phrases seem to refer to the taxpayer who actually paid the tax.

Nevertheless, there are substantial (though not conclusive) reasons for applying § 6511(a) to this case—as defendant urges—and for applying it in terms of the tire manufacturer's filing of the return and the tire manufacturer's payment of the tax. See, for an analogy, Rev.Rul. 60–58, 1960–1 Cum.Bull. 638.[11]

But if, as the Government insists, Strick's normal limitations period is to be tied directly to Firestone's, we see no adequate reason why an extension of Firestone's period should be inapplicable to plaintiff. There is no overriding textual obstacle. Subsection (c) of § 6511 ("Special rules applicable in case of extension of time by agreement") says, simply that if an extension agreement is timely made under § 6501(c)(4), "The period for filing claim for credit or refund or for making credit or refund if no claim is filed, provided in subsections (a) and (b)(1), shall not expire prior

---

**10.** I.R.C. § 6511(a) provides:

(a) Period of limitation on filing claim.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this

title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

**11.** The tire excise tax is not a "collected" tax, with which Rev.Rul. 60–58 specifically deals, but the present situation is comparable in that (a) Firestone alone paid the tax and filed the return, (b) that payment and that return satisfied the Code's requirements, and (c) under defendant's contention Strick is bound by Firestone's limitation period under § 6511(a).

to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4)." The reference is to the existence of an extension agreement, not to the particular person who entered into the agreement. If Firestone's payment of the tax and making of a return apply to this plaintiff for the purposes of § 6511(a), there is no textual reason in § 6511(c) why Firestone's extension agreement should not similarly apply to the plaintiff. The same type of textual difficulties exist for both § 6511(a) and § 6511(c), and if we can hurdle them for the former they can equally be overcome for the latter.[12]

The Government then argues that this construction runs counter to the congressional purpose to require mutuality, as between the right to make assessments and the right to seek refunds or credits when an extension agreement is signed—no additional assessment could be made against Strick during Firestone's extended period.[13] The courts have held, however, that such mutuality is not an absolute requirement if the statutory framework indicates otherwise. *Ancel v. United States*, 398 F.2d 456 (7th Cir. 1968); *Estate of Chism v. Commissioner*, 322 F.2d 956, 963 (9th Cir. 1963). Here, we consider that the statutory framework, viewed as a whole, does not demand mutuality, especially since it would be unlikely for one in Strick's position of "subsequent manufacturer" to owe additional tire taxes for which IRS would levy an assessment on it.

Finally, we are told that this construction of the Code is not administratively feasible. The IRS, it is said, will have trouble dealing with a multitude of refund claims by secondary manufacturers relying on extensions obtained by the primary manufacturers. We do not know whether or not this is so.[14] But the countervailing factor is that under defendant's view there will be difficulties, for the courts if not for the Service, in dealing with the not improbable situation in which the secondary manufacturer discovers late that the taxed tire has been exported and that the tire-maker's § 6511(a) time for seeking a refund or credit has either expired or been materially shortened.[15]

This last factor urges affirmatively in favor of plaintiff's construction of the extension provision of § 6511(c). There are inequities in the Government's position that, even though a person in Strick's position learns late (and without fault) of the exportation of the tires, he is still bound by the strict terms of the normal limitations period in § 6511(a). Interpreting Firestone's extension agreement to trigger an extension for plaintiff under § 6511(c) tends toward curing that element of unfairness by giving a longer time for seeking a refund or credit.

We hold, in short, that, if we accept for this case the defendant's proposition that Strick is bound to Firestone's limitation period as set forth in § 6511(a), then Strick also has the benefit under § 6511(c) of Firestone's extension. The result is that taxpayer's claim under Count Two is not barred by limitations. On remand, how-

---

**12.** Defendant points out that, first, § 6501(c)(4) refers to an extension of time (signed by both the taxpayer and IRS) for an IRS assessment, and, second, plaintiff never agreed to such an extension for assessment on it. But the literal language of § 6511(c) can be read as hinging on the existence of an extension agreement made by Firestone, in the same way as § 6511(a) depends on Firestone's date of filing its return and of its payment of the tax. There is a close parallel between the application to Strick of § 6511(a) and the application to it of § 6511(c).

**13.** The Government could, however, have sued Strick within two years of making an errone-

ous refund. IRC § 6532(b). In this case, defendant claims that IRS made such an erroneous refund to plaintiff, but no suit was brought to recover that refund.

**14.** If there is a problem, the IRS can make restricted extension agreements which would not extend to subsequent manufacturers or other "secondary" taxpayers.

**15.** Even under the Government's understanding of the facts this is such a case. Under the plaintiff's version of the facts, its position was much worse.

ever, it must show to prevail (as discussed *supra*) that either it did not pass on the tire tax to the Army or that the settlement agreement with the Army released to plaintiff any claim by the Army for refund of the tire tax.[16]

### Count Three—tort claim

█ With respect to the exportation of many of the trailers-cum-tires, the petition asserts that Army personnel (a) misrepresented that the tire excise tax was applicable even though the Army then knew that those items would be exported, and (b) improperly delayed in informing plaintiff of the exportation and in furnishing to plaintiff proof of export. In Count Two Strick raises this allegedly improper conduct as erecting an estoppel against application to plaintiff of the statute of limitations on tax refunds. Our disposition, under Count Two, *supra,* of the limitations defense moots this contention.

The same allegations are recited in Count Three as the predicate for a claim for damages under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1976). Plaintiff acknowledges that we have no trial jurisdiction under that Act, but it asserts the claim "pursuant to the pendent jurisdiction of this court."

It is not yet established that this court has any pendent jurisdiction. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 613, 372 F.2d 1002, 1012 (1967); *Lockridge v. United States,* Ct.Cl. No. 58–78, (Oct. 16, 1978). But *Lockridge* does determine that we have no pendent jurisdiction where Congress has expressly or by implication negated our exercise of jurisdiction over the particular claim. That was a suit for trademark infringement by the Government—a subject over which Congress has not given this court jurisdiction (though it has granted us patent and copyright jurisdiction). Relying on the pendent-jurisdiction principle of *Aldinger v. Howard,* 427 U.S. 1, 15, 18, 96 S.Ct. 2413, 2420, 2422, 49 L.Ed.2d 276 (1976), and *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 374–75, 377, 98 S.Ct. 2396, 2402–03, 2403, 2404, 57 L.Ed.2d 274 (1978), the court held that Congress had "by implication negated" pendent jurisdiction in this court over trademark infringement claims.

By the same token, we have no pendent jurisdiction over a suit under the Tort Claims Act. Our major jurisdictional provision, 28 U.S.C. § 1491 (1976), expressly excludes cases sounding in tort. In addition, trial jurisdiction over claims under the Tort Claims Act is specifically given to the district courts and those courts only. 28 U.S.C. §§ 1346(b), 2679 (1976). This combination of statutory provisions shows that we do not have pendent jurisdiction of these tort cases.

Count Three of the petition must therefore be dismissed for lack of jurisdiction. We do not consider it in the interest of justice to transfer this claim to a district court (*see* 28 U.S.C. § 1506 (1976)) and are not asked by plaintiff to do so.

### CONCLUSION

As to Count One, (a) defendant's motion to dismiss the first amendment to the petition is granted and that portion of the petition is dismissed; and (b) on the original petition the parties' motions for summary judgment are both denied without prejudice, with the case (including the counterclaim with respect to Count One) being remanded to the Trial Division for trial and further proceedings consistent with this opinion.

With respect to Count Two, (a) defendant's motion to dismiss the second amendment to the petition is denied and the court holds that this count is not barred by limitations; (b) the case is remanded to the Trial Division (for trial or other appropriate fact-

---

**16.** If taxpayer does not prevail on either of these issues, there may be a question whether the defendant will be entitled to an offset for the amount of the credit claimed by Strick for the fourth quarter of 1971 and previously allowed by IRS. We leave that question entirely open. Similarly with the Government's claim that it ought to be allowed to file a counterclaim on behalf of the Army.

finding procedure) on the two issues of whether plaintiff passed on the tire tax to the Army and whether the plaintiff's general settlement agreement with the Army released to plaintiff any claim by the Army for refund of the tire tax; and (c) otherwise than as to the statute of limitations and the two issues remanded to the Trial Division, the defendant's motion for summary judgment is granted and the plaintiff's motion is denied. Count Two, as a whole (including the counterclaim with respect to that count), is remanded to the Trial Division for further proceedings consistent with this opinion.

With respect to Count Three, plaintiff's motion for summary judgment is denied, defendant's is granted, and that part of the petition is dismissed.

Plaintiff's motion for an order to compel defendant to comply with order for production of documents is referred to the trial judge for consideration and disposition.