**Cynthia KENNEDY**

v.

**The UNITED STATES.**

No. 34–88C.

United States Claims Court.

Dec. 14, 1989.

---

## OPINION

YOCK, Judge.

This case is before the Court on cross-motions for summary judgment. For the reasons stated below, the defendant's motion for summary judgment is granted, the plaintiff's motion is denied, and the plaintiff's complaint will be dismissed.

## FACTUAL BACKGROUND

In this action, the material facts are not in dispute. The plaintiff, Cynthia Kennedy, found a $10,000 United States Treasury Note in April, 1985.[1] The note was payable to the bearer and had an interest rate of 14 percent. The due date of the note was December 31, 1984. In an attempt to find the owner of the note, the plaintiff placed an advertisement in a local newspaper for one month. The plaintiff received no response.

On August 2, 1985, the plaintiff presented the Treasury note to the Northfield, New Jersey branch office of Collective Federal Savings and Loan Association for redemption. On August 8, 1985, the note was submitted by Collective Federal to the Federal Reserve Bank of Philadelphia. In accordance with the federal regulations, the plaintiff was required to submit a certificate of ownership because the note was overdue, which the plaintiff did, stating that she had found the Treasury note. Both the note and the certificate of ownership were then forwarded to the Bureau of the Public Debt of the Department of the Treasury (Bureau) on September 4, 1985.

On November 6, 1985, the Bureau informed the plaintiff by letter that according to federal regulation,

> [A] finder claiming ownership of a bearer security ... must perfect his title in accordance with the provisions of State law. If there are no such provisions, the Department will not recognize his title to the security.

The letter further stated that New Jersey, the state of plaintiff's residence, did not

Richard I. Goldstein, Pleasantville, N.J., Atty. of Record, for plaintiff.

Evelyn M. Korschgen, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Margaret Marquette, Dept. of the Treasury, of counsel.

---

1. The circumstances surrounding the finding by the plaintiff of the Treasury note have not been explained in any of the documents presented to this Court.

have such a statute that would enable a finder of property to perfect title, and, therefore, the Bureau could not honor the plaintiff's request for payment.

Thereafter, the plaintiff filed a complaint in this Court on February 17, 1988, seeking payment of the proceeds of the Treasury note and punitive damages against the Government for nonpayment.

## DISCUSSION

The central question presented in this case is whether the Government has an obligation to make payment to a finder of an overdue bearer Treasury note, when the finder has not perfected title to the security under state law, as required by federal regulations.

Although the plaintiff does not cite the Tucker Act as the basis for jurisdiction, it is clear that this Court has jurisdiction over matters based on contract.[2] Essentially, a claim for the redemption of a Treasury note is a claim based on principles of federal contract law. It is well established that notes and bonds of the United States are issued pursuant to a contract between the purchaser and the Government. Likewise, the Treasury regulations and circulars, under which the notes and bonds are issued, form a part of that contract, which determines the rights and duties of the parties to the contract. *Bodek v. Dept. of Treasury, Bureau of Public Debt*, 532 F.2d 277, 279 n. 7 (2d Cir.), *cert. denied*, 429 U.S. 849, 97 S.Ct. 137, 50 L.Ed.2d 122 (1976); *Boyd v. United States*, 493 F.Supp. 529, 532 (W.D.Pa.1980). *See generally Wolak v. United States*, 366 F.Supp. 1106 (D.Conn.1973). The purchaser, as a party to the contract, must therefore comply with the contractual obligations as contained in the applicable regulations and circulars.

 Plaintiff, however, was not the purchaser of the note, and, consequently,

she cannot be a party to the contract and assert the requisite privity of contract with the Government without showing something more. No privity—no claim is still the law when it comes to Government contracts. *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550–52 (Fed.Cir. 1983). *See generally Scope Enterprises, Ltd. v. United States*, 18 Cl.Ct. 875, 879–80 (1989). Privity of contract between the plaintiff and the Government can only arise if the plaintiff can establish title to the note, thereby entitling her to step into the shoes of the original purchaser and assume all the obligations of the contract.

On the other hand, if plaintiff can show that the regulations forming a part of the contract were unconstitutional or otherwise invalid, specifically the section requiring her to perfect title, then the issue of privity becomes moot. If the plaintiff cannot show either a current contractual relationship with the Government or an unconstitutional or otherwise invalid regulation, rendering the no privity rule moot, she cannot establish subject matter jurisdiction in this Court.

In her motion, the plaintiff claims that the regulations relied on by the Government are arbitrary and unreasonable in prohibiting the redemption of the note. Further, plaintiff urges that these regulations violate her fifth amendment rights of due process and equal protection. Specifically, she alleges that a rational basis does not exist to support a regulation allowing redemption based on the distinction of whether or not the finder resides in a state that has a statute for perfecting title to found property. Therefore, according to the plaintiff, the regulation is unconstitutional.

In the alternative, the plaintiff requests that if the regulation is valid, then the

---

2. This case was transferred to the United States Claims Court from the District Court of New Jersey by consent order for want of jurisdiction. In the district court, the plaintiff cited the Administrative Procedure Act in Title 5 of the United States Code; Title 28, section 1331 (federal question); Title 28, section 1346 (Government as defendant); and Title 28, section 1361 (mandamus) as the jurisdictional predicates. In her amended complaint filed in this Court, the plaintiff again realleges the same jurisdictional predicates that she raised in the district court action. Unfortunately, none of the cited sections pertain to or grant jurisdiction to this Court.

Court should assert pendent jurisdiction over the case to determine whether or not she has established title to the security under the laws of New Jersey.

The defendant argues that the regulations governing this matter are unambiguous and clearly support the Government's position. According to the defendant, these regulations are intended to protect the Government from being required to make payments from the United States Treasury to both the finder and the true owner of a security, and the regulations in question are a reasonable means to that end.

Title 31 C.F.R. § 306.25(b) (1988), which is under subpart D of the General Regulations Governing United States Securities dealing with redemption or payment and relates to presentation and surrender of "overdue securities," reads as follows:

If a bearer security or a registered security assigned in blank, or to bearer, or so assigned as to become in effect payable to bearer, is presented and surrendered for redemption after it has become overdue, the Secretary of the Treasury will ordinarily require satisfactory proof of ownership. (Form PD 1071 may be used.) A security shall be considered to be overdue after the lapse of the following periods of time from its face maturity:

(1) One month for securities issued for a term of 1 year or less.

(2) Three months for securities issued for a term of more than 1 year but not in excess of 7 years.

(3) Six months for securities issued for a term of more than 7 years.

Also, 31 C.F.R. § 306.100 (1988), which is under subpart L of the General Regulations dealing with transfer through judicial proceedings and relates to transferable securities, reads in pertinent part as follows:

The Department will recognize valid judicial proceedings affecting the ownership of or interest in transferable securities, upon presentation of the securities together with evidence of the proceedings. * * * 10

Footnote 10 of 31 C.F.R. § 306.100 (1988), quoted above, relates to the rights of a finder of a bearer security and reads as follows:

Title in a finder claiming ownership of a registered security will not be recognized. A finder claiming ownership of a bearer security or a registered security assigned in blank or so assigned as to become in effect payable to bearer must perfect his title in accordance with the provisions of State law. If there are no such provisions, the Department will not recognize his title to the security.

■ Plaintiff admits that she is a "finder claiming ownership." Plaintiff also admits that the note was "overdue" when presented for payment. Plaintiff further admits that New Jersey has no statutory provisions for perfecting title in found property and that she has made no other attempt to perfect title through the state courts of New Jersey. Finally, plaintiff admits that her fifth amendment claim is not based on any suspect classification. Therefore, the only way plaintiff's claim can succeed is if the alleged discriminatory effect of this regulation is so arbitrary and capricious that it is in no way rationally related to a legitimate governmental purpose. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). This is a particularly difficult hurdle to overcome because a classification is presumed to rest on a rational basis if there is any conceivable state of facts that will support it. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, *reh'g denied*, 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970).

■ The plaintiff acknowledges that a rational basis does exist for the discrimination caused by the regulation if the Government is still liable to the true owner after paying the proceeds to a finder who had not perfected title. In the eyes of the plaintiff, however, the Government would not be liable to the true owner of the bond she found because of the provisions contained in 31 C.F.R. §§ 306.110–.112 (1988). These provisions outline the requirements and procedures that must be followed by

the owner to obtain any relief for a lost security. Plaintiff correctly recounts that an indemnity bond is required from the true owner to protect the interests of the United States, 31 C.F.R. § 306.110 (1988), and that payment will be made only after a claim has been established and the conditions for granting relief have been met as prescribed in 31 C.F.R. § 306.112(b) (1988). In addition, however, plaintiff interprets the language in 31 C.F.R. § 306.111 (1988) to *require* that the true owner promptly report the loss to the Bureau, furnishing the name and address of the owner, the identity of the security by title, date, interest rate, serial number, and denomination, and a statement of the circumstances.

It is obvious from reading the "report of loss" regulation that it does not contain such mandatory terminology as urged by the plaintiff, but rather states that "[p]rompt report of the loss, * * * of a security *should* be made to the Bureau. The report *should* include * * *." 31 C.F.R. § 306.111 (1988) (emphasis added). This language is not mandating a prompt report, but rather is putting the owner on notice that a prompt report should be made. Therefore, despite plaintiff's argument that it is now impossible for the true owner to comply with the "prompt" report requirement because almost four years have passed since the loss occurred and no claim has been made, the plain language of the regulation does not comport with the plaintiff's view.

Plaintiff cannot circumvent the perfection requirements by attempting to show that the true owner cannot comply with the requirements for obtaining relief on a lost security. Whether or not the true owner can comply with the obligations imposed to recover the lost security would demand an interpretation of the word "prompt"—an issue that is not before this Court. The plaintiff cannot sidestep the requirements imposed upon her to recover as a finder by pointing out the various hurdles that may be facing the true owner.

The argument advanced by plaintiff to the effect that reliance on the regulation requiring perfection of title frustrates public policy is likewise without support. Plaintiff relies on footnote 11 in 31 C.F.R. § 306.106(a) (1988) to assert that the policy of the Treasury Department is to "assume no responsibility for the protection of bearer securities not in the possession of persons claiming rights therein * * *." In support of this policy, plaintiff quotes the statement of the Secretary of the Treasury, also set forth in footnote 11, to the effect that all bonds payable to bearer will hereafter be paid to the party presenting them.

This statement does not, however, allow lost securities to be freely negotiated as plaintiff alleges. First of all, footnote 11 relates to the text of section 306.106(a) entitled "Securities not overdue," which discusses notices of claims for suspending transactions in bearer securities which are *not* overdue. The bond found by the plaintiff in April of 1985 was due on December 31, 1984, and clearly falls within the definition of an overdue security as set forth in 31 C.F.R. § 306.25(b) (1988), quoted *supra.* Therefore, this subsection is not applicable.

Secondly, assuming *arguendo* that this footnote did apply to the bond plaintiff found, it would still not support a finding for the plaintiff. The specific language that plaintiff is relying on states:

Hereafter all bonds, notes, and coupons, payable to bearer, and Treasury notes issued and remaining in blank, will be paid to the party presenting them *in pursuance of the regulations of the Department * * *.*

31 C.F.R. § 306.106(a) n. 11 (1988) (emphasis added). Even if the plaintiff is the party presenting the bond, the Department of the Treasury can only pay her pursuant to the regulations. It is here that plaintiff once again faces the same roadblock—she must perfect her title before the Department can pay her "pursuant to the regulations."

Contrary to the plaintiff's assertions, the language of the regulations do not relieve the Government of liability to the true owner if the plaintiff is paid the proceeds, nor does the language authorize the Government to pay the proceeds of the bond to the plaintiff unless or until she has perfected

title. Furthermore, Attorney General opinions have consistently held that the Department of the Treasury has a duty to hold the security in question until it is claimed by the true owner unless title has been perfected in a finder. 32 Op. Att'y Gen. 80 (1919); 33 Op. Att'y Gen. 59 (1921); 37 Op. Att'y Gen. 20 (1932). Although these opinions are not binding on this Court, they are to be given persuasive weight. *McDonald v. United States,* 89 F.2d 128, 135 (8th Cir.), *cert. denied,* 301 U.S. 697, 57 S.Ct. 925, 81 L.Ed. 1352 (1937).

In *Thrift Shop v. Federal Reserve Bank of Philadelphia and United States,* No. 76–2586 (E.D.Pa. Mar. 15, 1977), almost identical facts were present as are now before this Court. The plaintiff in that case found two bearer securities in some clothing that had been donated to it, but could not perfect title because Pennsylvania did not have a procedure allowing perfection by finders. In applying the same regulation at issue here, the district court stated that "[t]his regulation is intended to protect the United States Treasury from being required to make payment to both the finder and the true owner," *id.* at 2, which appears to be a paraphrased version of portions of the 1932 Attorney General opinion. *See* 37 Op. Att'y Gen. at 22. Despite plaintiff's status as a charitable organization and the attractiveness of rewarding it as a finder, the district court denied Thrift Shop's claim for payment of the bonds, holding that the Government had no obligation to pay since the Thrift Shop had not perfected title in accordance with the regulation. *Thrift Shop,* No. 76–2586 at 2.

■ There can be no doubt that a rational basis exists for the regulation. The public fisc is to be protected from multiple payments for the same obligation, and each state has been given the opportunity to choose between promulgating its own statutes to ensure this protection or acquiescing to the provisions of the existing federal regulation. Regardless of which choice is elected, the regulation is a reasonable means to guard the Federal Treasury from being opened twice, or more, to pay the one debt. Plaintiff has not shown that the Government is absolved from its liability to pay the proceeds of the note to the true owner, nor can she succeed in contending that the Treasury regulation is unconstitutional merely because the State of New Jersey chose to acquiesce rather than to promulgate.

■ Furthermore, even though there is apparently no *statutory* right to bring an action in the New Jersey state courts to determine ownership of lost personal property, there is no indication that the state courts would preclude an action brought at common law to accomplish the same purpose. Until the plaintiff has attempted to perfect her title to the Treasury note in a state court proceeding, she has not exhausted her administrative remedies to resolve her claim against the Government. The Court views the Government's refusal to honor the plaintiff's claim at this point as a consequence of the simple fact that she does not have an order from a state court declaring her the lawful owner of the note. If she were to receive such an adjudication (and the record shows no attempt to obtain one), then the Government would be protected from its double payment problem and would, undoubtedly, honor the plaintiff's claim. Once the plaintiff has been declared the owner, she would then stand in privity with the United States Government and could invoke the terms of the underlying contract mandating payment.

■ Plaintiff has also requested that this Court assert pendent jurisdiction to determine whether she has established title to the Treasury note under the common law of New Jersey. That request, however, must be denied. The United States Claims Court is a specialized court, and its jurisdiction is defined by specific statutes. *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). If the relief sought is other than a money judgment against the United States, the suit must be dismissed; and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the Court. *United States v. Sherwood,* 312 U.S. 584,

588, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). Furthermore, if the maintenance of a suit against private parties is a prerequisite to the prosecution of the suit against the United States, the suit must be dismissed. *Id.*

The role of pendent jurisdiction in this Court has not yet been established. *Strick Corp. v. United States,* 223 Ct.Cl. 262, 279, 625 F.2d 1001, 1010 (1980) (citing *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 613, 372 F.2d 1002, 1012 (1967); *Lockridge v. United States,* 218 Ct.Cl. 687 (1978)). No cases have been found where this Court or its predecessor court has asserted pendent jurisdiction. *See, e.g., Thompson Tower Ltd. Dividend Housing Ass'n v. United States,* 228 Ct.Cl. 766, 771 (1981) (Congress has given Court of Claims no jurisdiction over suits on contracts where there is no privity between plaintiff and Government); *Watson v. United States,* 9 Cl.Ct. 763, 774 (1986) (no pendent jurisdiction for claims outside Court's limited jurisdiction); *ATL, Inc. v. United States,* 4 Cl.Ct. 672, 676, *aff'd,* 735 F.2d 1343 (Fed. Cir.1984) (without Congress's authorization, it is fair inference that Congress did not intend for Court to have jurisdiction).

Although the Supreme Court recently recognized that "[w]hatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress," *Finley v. United States,* —— U.S. ——, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989), until that occurs, the Claims Court is confined to the jurisdictional limits contained in 28 U.S.C. § 1491 (1982). A grant of jurisdiction over claims involving particular parties (*i.e.,* the United States) does not itself confer jurisdiction over additional claims by or against different parties. *Finley,* 109 S.Ct. at 2010.

■ Here, plaintiff is asking this Court to rule on an issue involving New Jersey commercial law—a subject matter that is clearly beyond the jurisdictional limits of the Claims Court. Pendent jurisdiction may be assumed, however, at the Court's discretion in the interests of judicial economy, convenience, and fairness. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–

26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). But federal courts have been cautioned "not [to] be overeager to hold on to the determination of issues that might be more appropriately left to settlement in state court litigation * * *." *Strachman v. Palmer,* 177 F.2d 427, 433 (1st Cir.1949) (Magruder, C.J., concurring). The Supreme Court has, likewise, commented on this issue:

> Due regard for the rightful independence of state governments ... requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Finley,* 109 S.Ct. at 2008–09 (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)).

■ This precaution is especially applicable in plaintiff's case. While assuming pendent jurisdiction would clearly advance plaintiff's convenience, it would, at the same time, prevent fairness and consistency. Not only has the legislature of New Jersey chosen to remain silent on the issue, but the New Jersey case law is also less than dispositive. Having a specialized federal court, with no generalized equitable jurisdiction authority, rule on the issue of whether or not the plaintiff has perfected title would encroach upon the terrain of both the New Jersey legislature and the New Jersey courts. A determination of New Jersey commercial law should be reserved for the political or judicial bodies located within the State of New Jersey.

Furthermore, were the state courts of New Jersey to decide the ownership issue unequivocally in the plaintiff's favor, the matter would then be administratively resolved, and there would be no necessity for a claim in this Court. Clearly, the ownership issue is the predominant issue in this case and should be or should have been resolved by the State of New Jersey.

In summary, the federal regulations at issue here are rationally related to a legitimate Government purpose and, as such, are valid and binding on the plaintiff. The Government, pursuant to the regulations, has no duty to make payment to a finder of an overdue bearer security unless the find-

er perfects title to the security in accordance with state law. No privity of contract exists at this point between the plaintiff and the Government, and thus, the plaintiff has not stated a claim within the jurisdiction of this Court.

## CONCLUSION

For the reasons discussed herein, the defendant's motion for summary judgment is granted. Plaintiff's motion is denied and her complaint will be dismissed.

Each party is to bear its own costs.