SOMERVILLE TECHNICAL SERVICES

v.

The UNITED STATES.

No. 217–79C.

United States Court of Claims.

Jan. 28, 1981.

Wilfred O. Schmidt, Grand Rapids, Mich., attorney of record for plaintiff Somerville Technical Services.

Marsha D. Peterson, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and KASHIWA, Judge.

SKELTON, Senior Judge:

The Farmers Home Administration (FHA) of the United States Department of Agriculture made a Community Facility loan of $278,000 and a grant of $182,000 to the Village of Roscommon, Michigan, (the Village) in November, 1971, for the construction of a sewer project pursuant to 7 U.S.C., §§ 1926 and 1927, and 7 C.F.R., Part 1933 (1976). The plaintiff Somerville Technical Services was low bidder on certain specific construction work on the project and was awarded a contract in the sum of $268,800 for such work. The "Notice and Instructions to Bidders" for this contract provided, among other clauses, the following:

"13. For the purpose of clarification, it is understood that the work to be done is being financed in whole or in part by means of a loan and grant made or insured by the United States of America acting through the Farmers Home Administration of the Department of Agriculture. *The Farmers Home Administration will, therefore, require approval by its representatives of all contracts, attachments, and similar documents, all partial and final payment estimates, and all change orders.* Bids shall include sales tax and all other applicable taxes and fees.

14. Computation of quantities that will be the basis for payment estimates,

both monthly and final, will be made by the Engineer.

15. The word 'owner' means the VILLAGE OF ROSCOMMON. *The Owner will be responsible for payment in accordance with the terms of the contract."* (Emphasis supplied).

A contract was signed between the Village as "Owner" and plaintiff as "Contractor" whereby the plaintiff agreed to construct a "Waste Water Treatment Facility" for the above contract price and to furnish all "materials, supplies, machinery, equipment, tools, superintendence, labor, insurance, and other accessories and services" in connection with such construction. The FHA was not a party to the contract although it did approve it in accordance with the above quoted paragraph 13 of the Notice and Instructions to Bidders and as provided in a footnote at the end of the contract which stated:

"This contract is invalid unless approved by the Administrator of the Farmers Home Administration or his delegate as lender or insurer of funds to defray the cost of this contract, *and without liability for any payment thereunder,* the Farmers Home Administration hereby concurs in the award of this contract_ _ _." (Emphasis supplied).

The contract contained the following provision which obligated the Village to pay plaintiff for constructing the plant:

"*The Owner agrees to pay the Contractor in current funds for the performance of the contract,* subject to additions and deductions, as provided in the General Conditions of the Contract, and to make payments on account thereof as provided in Paragraph 25, 'Payments to Contractor,' of the General Conditions." (Emphasis supplied).

The plaintiff finished its work on the project on October 9, 1974, at which time the Michigan FHA state office made a final inspection of the project and approved, along with the Village, a "Partial Payment Estimate No. 13-Final." This estimate showed that it had cost the plaintiff $294,-

355 to complete the job. Up to that time the Village had received the entire proceeds of the $278,000 loan and the $182,000 grant from the FHA and had paid the plaintiff $238,531.76, and, consequently, still owed the plaintiff $55,823.24. The Village paid the plaintiff an additional $5,000 on November 30, 1975, leaving an unpaid balance of $50,823.24. The Village had paid the balance of the funds it had obtained from the FHA to other contractors who had done work on other parts of the project. Because of these payments, the Village did not have the funds to pay plaintiff the entire balance due it under the contract. However, on July 8, 1976, the Village did pay the plaintiff an additional $45,012.38, as a result of a settlement it made with the plaintiff, leaving an unpaid balance of $5,378.15 due the plaintiff. The Village executed a note for this balance payable to the plaintiff pursuant to a resolution adopted by the Village City Council on June 10, 1976, authorizing the execution of the note, which resolution provided:

" * * * the same [the note] being for interest *to be paid only if this amount is collectible from Farmers Home Administration as per contract documents."* (Emphasis supplied).

Thereafter, on July 8, 1976, the Village and the plaintiff signed a settlement agreement containing the following pertinent provisions:

"3. *The Contractor hereby agrees to accept* as complete and final payment under the said contract the amount of $45,-012.38 *and a conditional note* (Exhibit 1 attached hereto) for the interest accrued at the rate of 6% per annum upon the said amount of Final payment due and payable on October 15, 1974; the said interest being in the amount of $5,378.15. (Emphasis supplied).

\*     \*     \*     \*     \*     \*

"4. *The said note for interest being conditioned upon the Owner's ability to collect the said sum from* its 'lender and insurer of funds to defray the cost of this contract,' *the Farmers Home Administration* of the United States Department of

Agriculture, *or any other Federal or State Agency* from whom funds to defray the cost of the said contract are otherwise obtainable by the Owner." (Emphasis supplied).

The conditional note that was attached to the settlement was as follows:

"EXHIBIT I

$5,378.15          Grand Rapids, Michigan 7–8–76

*FIFTEEN (15) days after date of receipt of funds to defray the cost of interest under contract described as* 'Waste Water Facility Contract No. 2, Treatment Facilities', *the Village of Roscommon acting thru its president promises to pay to Somerville Technical Services the sum of Five Thousand Three Hundred and Seventy-eight and 15/100 Dollars.*

(SEAL)                    VILLAGE OF ROSCOMMON
                          OWNER

Attest:

Marjorie E. Biddle        By _____
                          [Signature unintelligible]"

(Emphasis supplied).

The FHA did not authorize the making of the settlement agreement or the note. Furthermore, the FHA did not sign either document and never ratified them, and was not in any way a party to the settlement arrangement made between the Village and the plaintiff.

After the settlement agreement and note were signed the Village made a request for the funds to pay the note to the United States Environmental Protection Agency which was denied by that agency. The Village then requested the additional funds from the FHA. The state director of FHA denied the request in a letter dated May 24, 1979, in which he stated:

"RE: VILLAGE OF ROSCOMMON SANITARY SEWER SYSTEM

Dear Mr. Miller:

The interest due on the conditional note would be considered an eligible project expense. However, FmHA funds are not available. According to our records, all project funds have been disbursed. Account records are available for review at our West Branch County Office.

A request for additional funds to cover the conditional note would be denied for the following reasons:

The request is not grant eligible.

The administrative and legal expenses necessary to issue evidence of debt would exceed the loan amount.

If we can be of further assistance, please contact this office.

Sincerely,

ROBERT L. MITCHELL

State Director"

Thereafter, the plaintiff filed this suit against the United States for the sum of $5,378.15 (the amount of the note), together with interest and costs, claiming that there is an implied in fact contract between it, the Village, and the United States that obligates the Government to pay the note. The case is before us on cross-motions for summary judgment. We hold for the defendant.

The plaintiff argues that an implied in fact contract exists between it, the Village, and the Government because the FHA prepared the notice to bidders, drafted the contract document, approved the plans, approved the contract, inspected the work, approved progress payments and especially the final payment showing the plaintiff had spent more on the contract than the contract price, and by the statement of the FHA State Director that the amount of the note would be an eligible cost of the project if the funds were available. Based on all of the foregoing, the plaintiff somehow concludes that in making the grant and loan the Government was a party to the contract, and by reason thereof became an insurer and guarantor of the Village as to the payment of all costs of the contract including the payment of the note that the Village executed in favor of the plaintiff. The plaintiff argues that the foregoing facts create an implied in fact contract in its favor against the Government that entitles it to recover. The plaintiff also contends that the Government is bound to pay the note because of estoppel. We reject all of plaintiff's arguments and contentions. There was no privity of contract between the FHA and the plaintiff either with respect to the construction contract or the

Village note. The FHA was not a party to either document and was acting in a sovereign capacity in making the grant and loan. All of these arguments and contentions with respect to the Government's grant have been settled and disposed of contrary to plaintiff's position in two *en banc* decisions of this court, namely, *D. R. Smalley & Sons v. United States*, 178 Ct.Cl. 593, 372 F.2d 505, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967); and *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 468 F.2d 922 (1972).

The *Smalley* case is very much like the instant case. In that case the United States made a grant to the State of Ohio of 90 per cent of the cost of building a highway in that state. The plaintiff was a contractor who lost almost three million dollars on the project. The plaintiff then made a settlement with the State of Ohio whereby Ohio paid plaintiff a part of the loss, leaving over two million dollars of it unpaid. The plaintiff then sued the United States for this unpaid balance, claiming that there was an implied in fact contract that obligated the Government to pay the balance of the loss. The plaintiff contended that the following acts of the Government created the implied contract:

" * * * [T]he contracts were drafted pursuant to the regulations and requirements of defendant; the contracts were approved by defendant; the work was inspected and approved by defendant as it progressed; changes in plans were approved by defendant; the final completion of the work was inspected and approved by the defendant; and defendant agreed by the provisions of the law to pay the state (for the benefit of plaintiff) ninety per cent of the cost of the contracts. By reason of these claims, plaintiff asserts that it had express contracts with the defendant and in the alternative, the defendant was bound by implied contracts." 178 Ct.Cl. at 596–597, 372 F.2d at 507.

There was no privity of contract between the plaintiff and the Government in that case. We held that the Government was acting in a sovereign capacity in making the grant and was not liable for plaintiff's claim. In this regard we held:

"When Congress passed the Federal-Aid Highway Acts which obligated the Government to reimburse the states to the extent of ninety per cent of the cost of construction of any approved highway that was a part of the Federal interstate system of roads, it exercised sovereign powers of the Government. Likewise, the establishment of standards and requirements, the approval of the form of contract, the inspection of work, and the payment of ninety per cent of the cost of each project to the state involved by the Bureau of Public Roads, were sovereign acts of the Government and were not directed solely to the plaintiff but affected the general public and were done for the common good and the general welfare.

"It is well established that the Federal Government is not liable for damages resulting from sovereign acts performed by it in its sovereign capacity. *Horowitz v. United States*, 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736 (1925); *Jones v. United States*, 1 Ct.Cl. 383 (1865)."

"The National Government makes many hundreds of grants each year to the various states, to municipalities, to schools and colleges and to other public organizations and agencies for many kinds of public works, including roads and highways. It requires the projects to be completed in accordance with certain standards before the proceeds of the grant will be paid. Otherwise the will of Congress would be thwarted and taxpayers' money would be wasted. See *Mahler v. United States*, 306 F.2d 713, 716–22 (3rd Cir. 1962), *cert. denied*, 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231. These grants are in reality gifts or gratuities. It would be farfetched indeed to impose liability on the Government for the acts and omissions of the parties who contract to build the projects, simply because it requires the work to meet certain standards and upon approval thereof reimburses the public agency for a part of the costs." 178 Ct.Cl. at 597–598, 372 F.2d at 507.

\*      \*      \*      \*      \*      \*

"The sovereign acts of defendant described above do not impose liability on defendant for the acts and omissions of the State of Ohio on the theory of implied contract. The contracts were between the state and plaintiff.

"Accordingly, since there was no privity of contract, express or implied, between plaintiff and defendant, the defendant is not liable in contract for the damages claimed by plaintiff." 178 Ct.Cl. at 598, 372 F.2d at 508.

■ The reasoning of the court in *Smalley* is squarely applicable to the instant case. When Congress enacted 7 U.S.C. §§ 1926 and 1927 authorizing the FHA to make Community Facility loans and grants it acted in its sovereign capacity. The FHA in carrying out the provisions of the Act in the manner described above also acted in a sovereign capacity. There can be no liability imposed on the Government by an implied in fact contract when it acts as a sovereign. Under such circumstances it has not consented to be sued.

We followed the *Smalley* case in *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 468 F.2d 922 (1972), where we held:

"The contract here in issue is one of many pursuant to which the Federal Government subsidizes projects of state and local authorities for the public betterment. The United States, however, does not make itself a party to the contracts relating to said projects but obligates itself by separate agreements, as here, to local authorities for the funding of those projects it approves. The significance of that approval is spelled out here in Article IX. This does not create an express or implied contract between plaintiff and defendant nor does it make the Commission defendant's agent through HUD. HUD's actions were performed in defendant's capacity as sovereign. This principle has been settled for some time by a similar case involving construction under the Federal-Aid Highways Act. *D. R. Smalley & Sons v. United States*, 178 Ct.Cl. 593, 372 F.2d 505, *cert. denied*, 389 U.S. 835 [88 S.Ct. 45, 19 L.Ed.2d 97] (1967). The *Smalley* case is squarely in point." 199 Ct.Cl. at 710, 468 F.2d at 924.

Also, see the order of this court in *Peoples Apparel, Ltd. v. The United States, et al*, No. 4–80C, decided December 5, 1980, which follows and reaffirms our decision in the *Smalley* case.

■ We follow the above decisions of our court in deciding the instant case. We hold that the FHA was acting in a sovereign capacity in making the grant and loan to the Village and in requiring the project to be constructed in accordance with the wishes of Congress. Consequently, there was no implied in fact contract that imposed liability on the Government for plaintiff's cost over-run.

■ We reject plaintiff's claim of a contract implied in fact for the further reason that the various elements of such a contract have not been proven. We said in *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 508 F.2d 817 (1974):

"*It is fundamental that to constitute an implied contract upon which one may recover under the Tucker Act there must be some consideration moving to the United States, or the Government must have received money under a duty to pay it over, or the claimant must have a lawful right to the money when it was received, such as money paid under a mistake. Knote v. United States, 95 U.S. 149, 156, 24 L.Ed. 442 (1877). Before a contract may be implied in fact, there must be a meeting of the minds which is inferred from the conduct of the parties, and in the light of the surrounding circumstances, shows their tacit understanding. Baltimore and Ohio R.R. Co. v. United States, 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816 (1923).*" 205 Ct.Cl. at 750–751, 508 F.2d at 822. (Emphasis supplied).

There is no proof here that there was any consideration moving to the United States. Neither is there any evidence of the necessary requirement of meeting of the minds. *See Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 428 F.2d 124 (1970); and *Russell*

*Corp. v. United States*, 210 Ct.Cl. 597, 537 F.2d 474 (1976).

■ We hold further that the Government is not liable by reason of estoppel because there can be no estoppel against the Government when it acts in a sovereign capacity, as here. Besides, the elements of estoppel have not been proven by the plaintiffs in the instant case.

■ The plaintiffs contend that the United States was a guarantor or insurer that required it to pay *all* costs of the project. We reject this argument. If the Government is to be held to such a guarantee or warranty it must be expressly stated in a contract or statute and cannot be implied. We so held in the *Somali* case as follows:

> "It is well settled that such a warranty as plaintiffs claim will not be implied on the part of the United States where the warranty is not expressly provided for in a statute or contract. *Henry Barracks Housing Corp. v. United States*, 150 Ct.Cl. 689, 281 F.2d 196 (1960); *Chelsea Towers, Inc., supra.* See also *Farm Security Administration v. Herren*, 165 F.2d 554 (8th Cir.), *cert. denied*, 333 U.S. 875 [68 S.Ct. 904, 92 L.Ed. 1151] (1948), * * *." 205 Ct.Cl. at 751, 508 F.2d at 822.

■ There was nothing in the loan that FHA made to the Village, as distinguished from the grant, that imposed any liability on the Government for the plaintiff's cost over-run. The loan was made to the Village and not to the plaintiff and was a sovereign act by the FHA. *See United States v. Thomas*, 107 F.2d 765 (5 Cir. 1939); *Federal Land Bank v. Bismark Lumber Co.*, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941); and *Federal Land Bank v. Board of County Comrs.*, 368 U.S. 146, 82 S.Ct. 282, 7 L.Ed.2d 199 (1961). Aside from the defense of sovereignty, we know of no case that holds that a lender of funds to an owner for a construction project is liable for a cost over-run of a contractor working on the project when, as here, there is no privity of contract between the lender and the contractor.

The liability of the Village on the note on which plaintiff sues was conditioned on the Village's being able to obtain the funds from the FHA or some other agency of the Federal Government or from a state agency. This condition has not been met, and, therefore, it appears that not even the Village is liable on the note at this time. However, we do not decide that question, as it is not before us. We only hold that the Government is not liable on the note, because, among other reasons, it did not sign it nor have anything to do with its execution, and has never ratified nor guaranteed its payment. The letter from the State Director of the FHA that the note would be an eligible item of expense if the money was available did not create any liability on the part of the Government as contended by the plaintiff. The Government had already paid all of the loan and grant to the Village and no more money was available. Furthermore, the plaintiff has not shown that the State Director of the FHA had authority to make the Government liable for the note. Such proof is required before the Government could be made liable for its payment by the act of the FHA State Director. *See Housing Corp. of America v. United States, supra*, where we held:

> "The United States is not bound by the unauthorized acts of its agents. Here, assuming that plaintiff's recollection of events is correct, it has not shown that Sabella and Brown acted within their authority. It is plaintiff's responsibility to make such a showing and plaintiff is deemed to have notice of their limited authority. *Federal Crop Ins. Corp v. Merrill*, 332 U.S. 380, 384 [68 S.Ct. 1, 3, 92 L.Ed. 10] (1947); *National Bank of N. America v. United States*, 197 Ct.Cl. 948, 456 F.2d 754 (1972); *California-Pac. Util. Co. v. United States*, 194 Ct.Cl. 703 (1971); *Fountain v. United States*, 192 Ct.Cl. 495, 427 F.2d 759 (1970), *cert. denied*, 404 U.S. 839 [92 S.Ct. 131, 30 L.Ed.2d 73] (1971); *Miami Metropolitan Bldg. Corp. v. United States*, 180 Ct.Cl. 503 (1967)." 199 Ct.Cl. 711–712, 468 F.2d at 925.

In addition to the foregoing reasons why the United States is not liable for the payment of the note to the plaintiff and is not required to advance the amount of the note to the Village, we point out that the Notice to Bidders provided that the owner [Village] "will be responsible for payment." In addition, the approval of the construction contract by the FHA clearly stated that it was approved "without liability for any payment thereunder," and the contract itself provided that "the owner [the Village] agrees to pay the contractor [the plaintiff] in current funds for the performance of the contract." Therefore, all of the contract documents obligate the Village to pay the plaintiff for the construction work on the project and at the same time exempt the Government from any such payment. Actually, the FHA paid the Village $460,000 for the project (loan of $278,000 and grant of $182,000), whereas plaintiff's total costs were $294,355 which was $165,645 less than the Government advanced for the work. If the plaintiff has any complaint, it is against the Village for paying the balance of the funds to other contractors, and not against the Government, which had nothing to do with such payments. Simply stated, there is no fact or legal theory in this case that makes the United States liable on the plaintiff's claim. The facts and the law are squarely against the plaintiff.

We hold that the plaintiff has not stated a claim on which relief can be granted.

Accordingly, the plaintiff's motion for summary judgment is denied and the cross-motion of the defendant is granted, and plaintiff's petition is dismissed.