Plaintiffs, Thompson Towers Limited Dividend Housing Association (Thompson) and Amurcón Corporation (Amur-con), have brought this suit seeking a declaration of their rights under certain contracts executed in accordance with *767 section 236 of the National Housing Act, and a money judgment of $110,206.88 as consequential damages for defendant’s failure to approve certain payments Amurcón claims entitlement to under the contracts. Defendant has moved for summary judgment on the grounds that the relief sought is beyond the jurisdiction of this court and that defendant owes no contractual obligation to the plaintiffs.[1]
Thompson and Amurcón are the sponsor and builder, respectively, of a housing project constructed under section 236 of the National Housing Act. The plaintiffs are deemed to have an identity of interest according to the regulations of the Department of Housing and Urban Development (HUD) because Amurcón is a general partner of Thompson. Thompson and the James T. Barnes Mortgage Company (Barnes) applied to HUD for the financial assistance made available by section 236 for the construction of low-income housing projects. The department approved the application and the parties entered into a number of interrelated agreements.
On December 5, 1974, HUD issued to Barnes and Thompson a "Commitment for Insurance of Advances” (HUD commitment) in which HUD agreed to endorse for insurance a mortgage note of $6,240,500, to be secured by a mortgage on the property. On December 23, 1974, Thompson executed the mortgage and mortgage note in Barnes’ favor for the above amount. On the same day, Barnes and Thompson executed a "Building Loan Agreement,” which set forth their responsibilities regarding the advancement of the loan proceeds. On December 27, 1974, Thompson entered into a "Construction Contract — Cost Plus” with Amurcón, the general contractor. This was a printed HUD form contract. Article 3 of this contract provided:
*768 Article 3 - Payments
A. (1) Subject to the provisions hereinafter set out, the Owner shall pay to the Contractor for the performance of this Contract the following items in cash:
(a) The actual cost of construction as defined in Article 10 below; plus
xxxxxxxxxxxx
In no event, however, shall the total cash payable pursuant to this paragraph (1) exceed $5.161.304.00- plus the amount by which the sum of the mortgage interest-taxes. property and mortgage insurance premiums itemized in paragraph (5) of the Owner’s Building Loan Agreement for this project exceed the Owner’s actual cost of these items.
Plaintiffs’ attorney had the following contract language x-ed over following paragraph (a) above: "(b) A fee of $.” The words which are underscored above, were added to the contract language by typewriter.
Amurcón completed construction of the project some 9 months ahead of schedule, thereby reducing Thompson’s so-called "soft costs” — the mortgage interest, taxes, property and mortgage insurance premiums — by approximately $200,000 less than the estimated amount. Plaintiffs have construed Article 3 of the construction contract as requiring Thompson to pay Amurcón the amount of the soft-cost savings as an incentive payment for the early completion. For this reason, Thompson included the incentive payment as a cost of construction on the "Mortgagor’s Certificate of Actual Cost,” which it submitted on August 23, 1976. HUD disapproved the certification of the incentive payments as an actual cost and refused to approve the final advance for mortgage insurance. Subsequently, Thompson submitted an amended certificate from which it omitted the incentive payment as a cost of construction. HUD approved this certificate.
Plaintiffs then brought suit in the United States District Court for the Eastern District of Michigan, seeking a declaratory judgment that Amurcón was entitled to the incentive payments and that HUD was obligated to approve *769 the certification of costs that had included the payments. Plaintiffs also sought consequential damages for HUD’s refusal to approve the original certificate. The district court ruled that it lacked jurisdiction over the action and transferred the case to this court pursuant to 28 U.S.C. § 1406(c) (1976). Plaintiffs seek essentially the same relief before this court that they sought in the district court.
At the outset, we note that plaintiffs’ complaint requests two forms of relief: a declaratory judgment pursuant to 28 U.S.C. § 2201 (1976), and consequential damages. It has long been settled that section 2201 does not confer authority on this court to grant a declaratory judgment. United States v. King, 395 U.S. 1, 5 (1969); Jankovic v. United States, 204 Ct. Cl. 807 (1974). Insofar as plaintiffs now seek relief pursuant to this statute, we cannot grant it. At argument, plaintiffs’ counsel also suggested that we order HUD to recertify Thompson’s costs. Relief of this sort is likewise beyond our jurisdiction except to implement a money judgment. 28 U.S.C. § 1491 (1976).
Plaintiffs seek a money judgment against defendant in the form of consequential damages, which represent the fees and penalties they claim to have incurred as a result of defendant’s actions and a loss of rental income. In order for plaintiffs to maintain their suit in this court, their claim must be "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.” 28 U.S.C. §1491 (1976). Plaintiffs assert that this court has subject matter jurisdiction over this case pursuant to section 1491, as well as other sections of the United States Code.[2] Plaintiffs have been less than *770 clear in identifying the precise grounds on which they are entitled to invoke Tucker Act jurisdiction, though it is apparent that they allege they have a contractual relationship with the United States. It is clear to us, however, that plaintiffs and defendant did not make any agreement which would permit plaintiffs to sue in this court.
In order to maintain a suit on a contract basis in this court, a plaintiff must be in privity of contract with the Government. See D. R. Smalley & Sons, Inc. v. United States, 178 Ct. Cl. 593, 598, 372 F.2d 505, 508, cert. denied, 389 U.S. 835 (1967). Plaintiffs assert that the agreements executed in conjunction with the project constitute a single "commercial relationship” through which they are in privity with defendant. Accepting as true the assertion that plaintiffs and HUD were engaged in the same commercial relationship, no privity arises from this relationship; plaintiffs were not signatories to the HUD Commitment, nor was HUD a party to the construction contract. See Aetna Casualty and Surety Co. v. United States, ante at 146, 153-54, 655 F.2d 1047, 1052-53 (1981); H.A. Ekelin & Associates v. United States, 225 Ct. Cl. 561 (1980); cf. Somerville Technical Services v. United States, 226 Ct.Cl. 291, 296, 640 F.2d 1276, 1279-81 (1981) (no privity between contractor and FHA on contracts FHA is not a party to); D. R. Smalley & Sons, Inc. v. United States, 178 Ct. Cl. at 596-98, 372 F.2d at 506-08 (1967) (no privity arises between contractor and Government from latter’s intimate involvement in details of contract).
The plaintiffs have further argued that HUD should be considered a party to the construction contract because it drafted and approved the terms of that agreement and supervised its performance. We have on several occasions held that a government agency acts in its sovereign capacity when it implements national policies such as those embodied in the National Housing Act and is thus not liable to third parties whose contracts with others are subject to the terms, approval, or supervision of the agency. See Aetna Casualty and Surety Co. v. United States, ante at 146, 153, 655 F.2d 1047, 1052-54 (1981); Somerville Technical Services v. United States, 226 Ct. Cl. at 297, 640 F.2d at 1279-81 (1981); H. A. Ekelin & Associates v. United States, supra; *771 Correlated Development Corp. v. United States, 214 Ct. Cl. 106, 117-18, 556 F.2d 515, 522-23 (1977); Housing Corp. of America v. United States, 199 Ct. Cl. 705, 709-10, 468 F.2d 922, 924-25 (1972); D. R. Smalley & Sons, Inc., v. United States, 178 Ct. Cl. at 596-98, 372 F.2d 506-08 (1967). The activities of HUD in drafting, approving, and overseeing the performance of the contracts here involved fit squarely within the rule of law in these cases and thus do not create any privity with plaintiffs. Having failed to establish privity, plaintiffs are not entitled to maintain their action in this court.
In contending that the Government is estopped from insisting on its interpretation of the construction contract, plaintiffs rely on statements made by John McFadden, a HUD employee. However, plaintiffs have not shown that McFadden had authority to bind the Government, and defendant has submitted an affidavit which establishes conclusively that McFadden had no such authority. Since the alleged agent was without authority, there is no estoppel against the Government. Housing Corp. of America and Correlated Development Corp., supra.
We must also reject plaintiffs’ contention that this court has pendent jurisdiction by virtue of the transfer from the district court. We have previously held that the transfer of a case from the district court does not confer jusrisdiction on this court. Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533 (1979). In a recent decision, we have also held that "we have no pendent jurisdiction where Congress has expressly or by implication negated our exercise of jurisdiction over the particular claim.” Strick Corp. v. United States, 223 Ct. Cl. 262, 625 F.2d 1001 (1980). Congress has not given this court jurisdiction over suits on contracts where there is no privity between the plaintiff and the Government.
Finally, plaintiffs have suggested that if we find a lack of jurisdiction, we should return the case to the district court. We decline to take that action. As previously noted, the district court found that at the time its decision was rendered, there was no identifiable fund within the control of the Secretary from which a judgment in favor of plaintiffs could be satisfied and that plaintiffs’ only appro *772 priate remedy would be a money judgment payable from funds in the United States Treasury. Since the amount claimed by plaintiffs exceeds $10,000, the district court would not have jurisdiction of plaintiffs’ claim even if privity of contract existed between plaintiffs and the Government. Marcus Harvey Square, Inc. v. Winston Burnett Constr. Co., 595 F.2d 1126 (9th Cir. 1979).
it is therefore ordered that defendant’s motion for summary judgment is granted and plaintiffs’ petition is dismissed.

 Defendant also has questioned whether plaintiffs had erroneously certified the incentive payments as an actual cost of construction. Because we find no privity between plaintiffs and defendant, we do not reach the matter of interpreting the construction contract.

 Plaintiffs assert that this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337,1494, and 2201. The first two of these statutes clearly pertain only to the district courts. Section 1494 is not applicable in this case, and section 2201 does not confer jurisdiction on this court. Plaintiffs’ reliance on 12 U.S.C. § 1702 is also misplaced; that statute is applicable only to suits in the district court and does not expand our Tucker Act jurisdiction. Moreover, the district court found that:
"In this case, there is no doubt that the project has been closed for mortgage insurance purposes for some time. As such, there would not be an identifiable fund within the control of the Secretary from which any judgment rendered in favor of plaintiffs could be satisfied, other than monies in the United States Treasury. Plaintiffs have not directed the court’s attention to any other conceivable source of such funds. * * *”