COFAN ASSOCIATES, INC.

v.

The UNITED STATES.

No. 201–82C.

United States Claims Court.

Dec. 13, 1983.

H.S. Tormos Y. Blandino, Hato Rey, P.R., for plaintiff.

Colvin W. Grannum, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, David M. Cohen, Director, Washington, D.C., for defendant.

## OPINION ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

The Land and Water Conservation Act of 1965, 16 U.S.C. §§ 460*l*–4 to 460*l*–11 (1980) established a program of matching federal grants to state and local governments for planning, acquisition and development of outdoor recreation lands. Pursuant to this authority on December 21, 1977, the United States Bureau of Outdoor Recreation (BOR) of the Department of the Interior entered into an agreement with the Commonwealth of Puerto Rico for the acquisition of land and the construction of a regional park by the municipality of Caguas. BOR agreed to provide $820,000 of the total estimated project cost of $1,640,000 and the Department of Housing and Urban Development (HUD) the remainder.

Plaintiff is a disappointed bidder for a construction contract on the regional park project advertised by the municipality of Caguas. Plaintiff alleges that it was low bidder but the municipality's procurement official improperly failed to award it the contract. It claims damages totaling $17,477,484 for its bid preparation costs, delays, employees' wages and salaries, depreciation, overhead, lost profits and other items. It seeks to have the United States held liable for these damages because the construction project was funded and sponsored by BOR and HUD.

■ A bidder on a federal contract may be entitled to damages, generally limited to bid preparation costs, when it is able to show that it submitted the lowest responsive bid on a contract and that it was not awarded the contract because of some arbitrary and capricious action by the contracting agency. *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 69, 140 F.Supp. 409, 412 (1956); *Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1237 (1970); *Keco Industries, Inc. v. United States,* 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203 (1974). The rationale of these decisions is that when someone submits a bid on a contract to a federal agency there is an implied contract that the bid will be fairly considered. Thus, there is a jurisdictional basis for such cases under the Tucker Act, 28 U.S.C. § 1491(a) (1980), as amended, which authorizes this court to render judgment on a claim against the government "founded * * * upon any express or implied contract with the United States."

It is undisputed that plaintiff did not submit its bid to a federal agency, but to Caguas. However, plaintiff asserts that a contractual relationship with the United States existed because it submitted a bid to develop a project funded by federal agencies and subject to federal controls.

■■ However, it is now firmly established that a person who enters into a contract with a state, municipality or other entity to perform services on a project funded in part by loans or grants-in-aid from the United States may not thereby be deemed to have entered into a contract with the United States. Nor is the result any different because the United States has imposed guidelines or restrictions on the use of the funds, including procurement procedures. *Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. 146, 655 F.2d 1047 (1981); *Somerville Technical Services v. United States,* 226 Ct.Cl. 291, 640 F.2d 1276 (1981); *Porter v. United States,* 204 Ct.Cl. 355, 496 F.2d 583 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975); *D.R. Smalley & Sons v. United States,* 178 Ct.Cl. 593, 372 F.2d 505, *cert. denied,* 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967).

In the most recent of these cases, *Aetna Casualty and Surety Co.,* a construction company and its surety sued the United States for their asserted losses in completing a federally insured housing project. They alleged that the government, as insurer through HUD, had implicitly made itself a party to the construction contracts by its dominant control and supervision of every phase of the project. In rejecting this claim, the court stated (228 Ct.Cl. at 152, 655 F.2d at 1052):

> Plaintiffs' allegations are but the most recent in a litany of cases where those indirectly associated with a dispensation of the federal largess have sought to recover an assortment of damages from the Government. It is well-settled, however, that where the United States does not make itself a party to the contracts which implement important national policies, no express or implied contracts result between the United States and those who will ultimately perform the work.

In *Somerville Technical Services,* the plaintiff was a construction contractor that built a water treatment facility under a contract with the Village of Roscommon, Michigan. The project was fully funded through a loan and a grant from the Farmers Home Administration of the United States Department of Agriculture (FmHA). FmHA required that its representatives approve all contracts, attachments, and similar documents, all partial and final payment

estimates, and all change orders. After the work was completed, the village agreed to pay a cost over-run incurred by Somerville, contingent upon obtaining the additional funds from the United States or the state. Upon the FmHA's rejection of the request for the additional money, plaintiff sued the United States for the unpaid balance, basing its claim on an implied in fact contract that plaintiff alleged obligated the United States to pay the balance of its loss. However, the court held that there was no contract, express or implied, because there was no privity between the plaintiff and the United States. The fact that the United States carefully controlled the expenditures for the project through the terms of the contract and the FmHA regulations was not sufficient basis for the court to find an express or implied contract between the United States and plaintiff.

In *Smalley,* the United States had made a grant to the State of Ohio for 90 percent of the cost of building a highway in that state. The plaintiff was a contractor who had lost almost three million dollars on the project. The state entered into a settlement with the plaintiff for about one million dollars, and the plaintiff sued the United States for the unpaid balance, claiming that the comprehensive federal regulations governing the highway construction contract created either an express or an implied contract between it and the United States. The court rejected that argument, explaining (178 Ct.Cl. at 597–98, 372 F.2d at 507):

> The National Government makes many hundreds of grants each year to the various states, to municipalities, to schools and colleges and to other public organizations and agencies for many kinds of public works, including roads and highways. It requires the projects to be completed in accordance with certain standards before the proceeds of the grant will be paid. Otherwise the will of Congress would be thwarted and taxpayers' money would be wasted. * * * These grants are in reality gifts or gratuities. *It would be far-fetched indeed to impose liability on the Government for the acts and omissions of the parties who contract to build the projects, simply because it requires the work to meet certain standards and upon approval thereof reimburses the public agency for a part of the costs.* [Emphasis added and citations omitted.]

Plaintiff further contends that the United States delegated procurement authority to the Caguas procurement officers or, put in another way, the Caguas officials were agents of the United States. The portions of the contract between BOR and the Commonwealth upon which plaintiff relies in support of this theory provide:

> B. *Project Execution*
>
> \* \* \* \* \* \*
>
> 2. (a) Contracts for construction * * shall be awarded through a process of competitive bidding.
>
> \* \* \* \* \* \*
>
> 3. The State shall secure * * * compliance with all the applicable Federal, state and local laws and regulations.

And

> The State agrees to comply with * * * the applicable regulations and procedures of the Department of the Interior * * *.

However, all that these provisions show is that the Commonwealth of Puerto Rico agreed to use federal funds in the manner prescribed in exchange for grants-in-aid. The contract provisions simply protected the defendant's interest by insuring that federal monies would be utilized for the stated projects and in an efficient manner. The contract gave the United States the right to require that its rules were followed to insure that the grant money was not wasted. By no stretch of the imagination does it constitute an express or implied delegation of the procurement authority on behalf of the federal government to the local officials. *See D.R. Smalley & Sons,* 178 Ct.Cl. at 598, 372 F.2d at 507–08.

In *United States v. Johnson Controls, Inc.,* 713 F.2d 1541 (Fed.Cir.1983) a subcontractor sought contract damages from the United States based on the theory that it had contracted with the government rather

than with the prime contractor, because the latter was an agent of the United States. In rejecting the agency argument the court suggested that at the minimum the following factors must be present to find such an agency relationship: (1) the prime contractor must act as a purchasing agent of the government; (2) the agency relationship between the government and the prime contractor must be established by clear contractual consent; and (3) the contract must state that the government would be directly liable to the vendors for the purchase price. *See also Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954).

Even if the first factor were present, there is no evidence that here there is the requisite clear contractual consent to make Caguas an agent or to make the United States liable to plaintiff as required by factors two and three. Certainly the provisions the plaintiff cites do not provide that delegation.

· Plaintiff also claims that authority for an agency relationship or delegation of federal procurement authority can be found in various regulations. Of these, plaintiff relies chiefly on 24 C.F.R. § 570.307(e) (Rev.1983) to establish that Caguas officials were authorized to act as federal procurement officials. Part 570 of 24 C.F.R. governs the activities of the Community Development Block Grant (CDBG) program administered by HUD. Section 570.307(e) provides that the grantee must certify that:

1. HUD delegates this NEPA responsibility to grantees pursuant to a specific statutory authorization contained in section 104(f) of title I of the Housing and Community Development Act of 1974, as amended, 42 U.S.C. § 5304(f) (1980).

2. Section 570.500 authorizes a grantee's chief executive officer to designate public agencies to carry out grant activities; § 570.501 incorporates 24 C.F.R. Part 570 into Community Development Block Grant program grant agreements; § 570.507 requires grantees under the CDBG to comply with the procurement standards of Attachment O of OMB Circular A–102; § 570.423(c)(2)(iii) requires the grantee to comply with all laws, regulations and executive orders applicable to the CDBG program;

(e) Its chief executive officer or other authorized certifying office of the applicant:

(1) *Consents to assume the status of a responsible Federal official under the National Environmental Policy Act of 1969 (NEPA) and other provisions of Federal law, as specified at 24 CFR 58.1(a)(3) and (a)(4), which further the purposes of NEPA insofar as the provisions of such Federal law apply to this part;*

(2) Is authorized and consents on behalf of the applicant and himself to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such an official. [Emphasis supplied.]

Contrary to plaintiff's position, this provision states only that the grantees chief executive officer or other authorized officer is required to assume the responsibility of a responsible federal official for purposes of the National Environmental Policy Act of 1969, and other provisions that further that law, not for procurement purposes.[1] Similarly, the numerous other subsections of 24 C.F.R. Part 570 cited by plaintiff have nothing whatsoever to do with the delegation of federal procurement authority to a grant recipient. An in depth discussion of each of these provisions is not necessary because there is no express delegation of federal procurement authority in any of these provisions.[2] To the contrary, the provisions of Attachment O of OMB Circular A–102,

§§ 570.603 to 611, excluding § 570.607, relate to the grantees responsibilities pertaining to the following statutes or acts: National Environmental Policy, Historic Preservation, Labor Standards, Architectural Barriers, Hatch, Flood Disaster Protection, Clean Air, Federal Water Pollution Control and Lead-Based Paint Poisoning Prevention; § 570.607 advises grantees of the procedures for applying CDBG funds for the provision of specified public services and facilities; § 570.910 advises grantees that HUD may take corrective and remedial actions where the Secretary determines that objectives of the CDBG have not been met; and § 570.913 describes other remedies for addressing a grantee's non-compliance with CDBG regulations.

made a part of the contract by 24 C.F.R. § 570.507, state, in part:

### PROCUREMENT STANDARDS

\*   \*   \*   \*   \*   \*

2. The Standard contained in this Attachment do not relieve the grantee of the contractual responsibilities arising under its contracts. *The grantee is the responsible authority, without recourse to the grantor agency regarding the settlement and satisfaction of all contractual and administrative issues arising out of procurements entered into, in support of a grant. This includes but is not limited to: disputes, claims, protests of award,* source evaluation *or other matters of a contractual nature.* Matters concerning violation of law are to be referred to such local, State, or Federal authority as may have proper jurisdiction. [Emphasis supplied.]

Certainly, this language supports defendant's position that it did not have any contractual relationship with the plaintiff, through an agent or otherwise.

Plaintiff's reliance on statutory provisions implementing the Land and Water Conservation Act of 1965,[3] which authorized funding for outdoor recreation projects, such as the park in Caguas, is also misplaced. Nowhere does this statute delegate to grantees, such as the municipality of Caguas, the authority to procure items on behalf of the United States or make such grantees agents of the United States.

### CONCLUSION

Defendant's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied. Judgment will be entered dismissing the complaint.