**EL DORADO SPRINGS, a limited partnership, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–336C.

United States Court of Federal Claims.

April 12, 1993.

Richard Cardulla, Washington, DC, for plaintiff.

Dean L. Grayson, U.S. Dept. of Justice, for defendant, with whom were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Martha H. DeGraff, Asst. Director, Washington, DC, Shirley Hochhausen, U.S. Dept. of Housing and Urban Development, Washington, DC, of counsel.

## OPINION

MARGOLIS, Judge.

This case comes before the court on the defendant's motion to dismiss for lack of subject matter jurisdiction. After careful review of the record and after oral argument, the defendant's motion to dismiss is granted in part and denied in part.

## FACTS

The plaintiff, El Dorado Springs, a limited partnership, sought Federal assistance in financing the development of a mobile home park and applied to the Department of Housing and Urban Development, ("HUD"), for mortgage insurance pursuant to section 207 of the National Housing Act of 1937, 12 U.S.C. § 1713 (1988). The Act authorizes HUD to insure mortgages granted by private lenders, thereby encouraging lenders to finance projects which otherwise might not be financed.

HUD regulations create a three-stage process for evaluating applications for mortgage insurance on mobile home projects. In the first stage, the project sponsor applies for a Site Appraisal and Market Analysis ("SAMA"). In the second stage, the sponsor applies for a Conditional Commitment from HUD for mortgage insurance, and in the third stage the sponsor applies for a Firm Commitment from HUD. An applicant for a SAMA provides HUD with basic information about the proposed project. HUD analyzes the project and issues a "SAMA letter" describing the results of HUD's appraisal. 24 C.F.R. § 207.1(a)-(b) (1992). An applicant may then submit another application for a conditional commitment or a firm commitment for mortgage insurance from HUD. 24 C.F.R. § 207.1(a).

At each stage, regulations require the applicant to submit an application fee. 24 C.F.R. 207.1(a). The amount of the application fee varies with the size of the mortgage. For an application for a SAMA letter, the fee is $1 per thousand dollars of the requested mortgage. 24 C.F.R. § 207.-1(a)(1). HUD has discretion to decide whether or not to refund an application fee if it rejects the application. 24 C.F.R. § 207.1(i).

According to the plaintiff, the plaintiff submitted two different applications for a SAMA letter. HUD required the plaintiff to make numerous revisions to its proposed project, but eventually rejected each application. The first application was rejected after HUD performed a Site Appraisal and Market Analysis. HUD determined that there was a "lack of market for the project." The second application was rejected for numerous reasons, including HUD's opinion that the project could not "generate sufficient income to support the proposed mortgage amount ... and to pay for the expenses required."

The plaintiff had submitted application fees with each application. The first fee was $11,955.00 and the second fee was $456.70. HUD did not refund these fees.

The plaintiff claims that HUD violated its own regulations in several ways. First, it alleges that HUD failed to perform the SAMA entirely. Second, the plaintiff alleges in the alternative that HUD did perform the SAMA, but that its methods of analysis were arbitrary and capricious in that they violated industry standards and government policies and were performed in bad faith. Third, the plaintiff contends that HUD's demand for revisions to the application were contrary to regulations and policies. Fourth, the plaintiff claims that HUD failed to review its decision to reject the plaintiff's application, in violation of HUD regulations, and failed to meet the deadline for rendering a decision on the plaintiff's application. Finally, the plaintiff claims that HUD acted fraudulently and negligently. The plaintiff seeks $15 million in damages.

The defendant asserts that there is neither a contract nor a money-mandating statute authorizing relief to this plaintiff. Therefore there can be no jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988). The plaintiff contends that the application fees created a contract obligating HUD to perform a SAMA in accordance with its regulations. The court finds that it has jurisdiction only over El Dorado's claim for return of its application fees.

## DISCUSSION

■ For the purpose of ruling on a motion to dismiss under RCFC 12(b)(1), unchallenged allegations in the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). The complaint should not be dismissed unless it is beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. *Hamlet*, 873 F.2d at 1416. The burden of proof to establish that this court has jurisdiction is on the plaintiff. *Reynolds v. Army & Air Force Exchange Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

■ The plaintiff alleges that this court has jurisdiction under the Tucker Act. The Tucker Act grants the U.S. Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It is well settled that the Tucker Act does not by itself create any substantive right against the United States for money damages. It merely confers jurisdiction on the Court of Federal Claims if other authority creates a substantive right to recover money damages. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976).

■ In this case, El Dorado's demand for $15 million in damages appears to derive from two types of losses. First, a

demand for refund of the application fees it paid to HUD. Second, a demand for lost profits and other consequential damages resulting from HUD's allegedly unlawful rejection of El Dorado's application. This court has jurisdiction only over El Dorado's claim for return of its application fees.

In *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599 (1967), the Court of Claims interpreted the Tucker Act's provisions for non-contractual claims against the United States. That court divided claims into two classes: "those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury," 178 Ct.Cl. at 605. The *Eastport* court held that claims in the first class, that is, claims for refund of monies paid over to the government, are within the Tucker Act jurisdiction of the Court of Claims. Relying on numerous precedents, the court stated "suit can be brought in this court to recover [such] exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere)." 178 Ct.Cl. at 606 (quoting *South Puerto Rico Sugar Trading Corp. v. United States*, 334 F.2d 622, 167 Ct.Cl. 236, 244). This principle received Supreme Court approval in *Testan*, 424 U.S. at 400, 96 S.Ct. at 954, when the Court distinguished claims for a "return of money" from the government, over which the Tucker Act grants jurisdiction, from claims for other money damages. This court's jurisdiction over the latter claims exists only if a federal statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (citing *Eastport*, 178 Ct.Cl. at 607).

El Dorado's claim for refund of its application fees falls into the first class of claims. El Dorado alleges it paid the fee because HUD regulations required the fee in order to process El Dorado's application for mortgage insurance. El Dorado alleges that HUD failed to follow its own regu-

lations in evaluating El Dorado's application; therefore HUD's refusal to refund its application fee is an abuse of discretion. The Court of Claims has previously heard a claim for refund of a HUD inspection fee. In *Lindy v. United States*, 546 F.2d 371, 373, 212 Ct.Cl. 142 (1976), the court held that it was an abuse of discretion for HUD not to refund an inspection fee when HUD did not perform an inspection. Because the demand for refund of its fee is a demand for return of money paid to the government, this court has Tucker Act jurisdiction.

■ El Dorado's claim for other damages, however, falls into *Eastport's* second class of claims—a claim for money damages. Therefore under the Tucker Act, this court only has jurisdiction if El Dorado had a contract with the government or if a federal constitutional provision, statute or regulation waives the government's sovereign immunity by mandating compensation for the damage sustained. In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity. *Testan*, 424 U.S. at 400, 96 S.Ct. at 954. Congressional consent to suit must be explicit and will be strictly construed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1383 (Fed. Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).

■ El Dorado offers various provisions in the National Housing Act, ch. 847, 48 Stat. 1246 (1934) (codified as amended at 12 U.S.C. §§ 1701–50 (1988)), which it claims constitute a waiver of sovereign immunity. Two statutory provisions that it cites clearly do not waive sovereign immunity. First, El Dorado cites 12 U.S.C. § 1713(d). That section authorizes the Secretary of HUD to collect insurance premiums and charges for appraisals and property inspections and does not provide a waiver of sovereign immunity. Next, El Dorado cites to the preamble to a statute, Pub.L. No. 101–625, Title III, § 328, 104 Stat. 4138 (1990), which requires the Secre-

tary to "maintain a viable system for full insurance programs." This preamble does not waive the government's sovereign immunity.

 Another provision in the National Housing Act creates a limited waiver of sovereign immunity, 12 U.S.C. § 1702. Section 1702 authorizes the Secretary of HUD to "sue and be sued" in his official capacity in any court of competent jurisdiction. However, that section does not create a waiver of sovereign immunity to sue the United States for damages resulting from a rejection of an application for mortgage insurance. Congress inserted the "sue and be sued" clause because of HUD's role as an insurer of mortgages. The section's original purpose was to permit holders of defaulted loans that were insured by HUD to sue HUD without encountering a defense of sovereign immunity. *James River Apartments, Inc. v. Federal Hous. Admin.*, 136 F.Supp. 24, 28 (D.Md.1955).

 Case precedent holds that section 1702 is not a general waiver of sovereign immunity. The Supreme Court found that section 1702 does not waive sovereign immunity as to lawsuits to garnish general government funds. *Federal Hous. Admin. v. Burr*, 309 U.S. 242, 250–51, 60 S.Ct. 488, 492–93, 84 L.Ed. 724 (1940). Prior cases in this court and its predecessors have rejected the argument that section 1702 is a general waiver of sovereign immunity. *W.P. Bill Atkinson Enters. v. United States*, 228 Ct.Cl. 886, 888, 1981 WL 21520 (1981); *Thompson Tower Ltd. Dividend Hous. Ass'n v. United States*, 228 Ct.Cl. 766, 769 n. 2, 1981 WL 21478 (1981). Most recently, in *Heagy v. United States*, 12 Cl.Ct. 694, 698 (1987), *aff'd*, 848 F.2d 1244 (Fed.Cir.1988), this court rejected the idea that section 1702 created any substantive rights against the government. Moreover, it is a fundamental principle that waivers of sovereign immunity will not be implied. *Mitchell*, 445 U.S. at 538, 100 S.Ct. at 1351–52. In light of this precedent, the limited purpose behind the "sue and be sued" clause, and the Supreme Court's admonition to strictly construe

waivers of sovereign immunity, this court holds that section 1702 does not create a waiver of sovereign immunity for El Dorado's claims.

 This court has found no other provisions waiving sovereign immunity in the National Housing Act, 12 U.S.C. §§ 1701–50, or its implementing regulations, 24 C.F.R. § 207.1. Neither does HUD's Handbook for the Mobile Home Park Program create a substantive right to money damages. The other cases cited by El Dorado were heard in U.S. district courts, not the Court of Federal Claims, and they do not reach the question of whether this court has jurisdiction in this case. In the absence of a statute or regulation waiving the Government's sovereign immunity for damages resulting from the denial of El Dorado's application, this court is without jurisdiction to hear those claims.

 El Dorado also argues that it had an implied contract with HUD. El Dorado claims that it paid HUD its application fees in return for HUD's implied duty to process the application in good faith and in accordance with HUD regulations. El Dorado relies on a doctrine arising out of *Heyer Products Co. v. United States*, 140 F.Supp. 409, 135 Ct.Cl. 63 (1956). In that case, a disappointed bidder in a government contract alleged that the bidding procedure was a mere sham to conceal the government's intention to award the contract to a favored bidder. The court found that the government had an implied contract with the bidders to consider the bids fairly and impartially. 135 Ct.Cl. at 69. El Dorado asks the court to apply the *Heyer* doctrine outside of the procurement setting and hold that an applicant for mortgage insurance could have an implied contract with the government to consider its application in good faith.

The court declines to do so. Precedent in this circuit obliges this court to be cautious about extending judge-made law beyond its original setting. In *Tree Farm Dev. Corp. v. United States*, 585 F.2d 493, 218 Ct.Cl. 308 (1978), the Court of Claims considered a case with similar facts. A developer applied to HUD for loan guarantees.

While HUD was processing the application, the HUD Secretary suspended consideration of all such applications. The developer alleged that HUD breached an implied duty to consider applications fairly and honestly. The Court of Claims rejected the theory and held that the *Heyer* rule only applies to disappointed bidders, not to applicants for governmental loan guarantees. 585 F.2d at 499. The Court of Appeals for the Federal Circuit has similarly refused to apply the *Heyer* rule outside the procurement setting. In *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077 (Fed.Cir.1989), the court refused to extend the *Heyer* rule, reasoning that the equities of a competitive procurement are different from those of a noncompetitive contract. 871 F.2d at 1080.

In this case, it is unnecessary to base jurisdiction on *Heyer*, because this court has jurisdiction over its claim for a refund of El Dorado's application fees. To do otherwise is to risk finding a waiver of sovereign immunity where none was intended. For these reasons, this court declines to apply the *Heyer* doctrine.

The complaint contains several allegations of tortious conduct. To the extent that these allegations sound in tort they are dismissed.[1] This court has no jurisdiction to hear tort claims. 28 U.S.C. § 1491(a)(1). Because there was no implied contract between the El Dorado and HUD, there is no jurisdiction over torts incident to a contract.

Finally, El Dorado's argument concerning a Fifth Amendment taking is without merit because the complaint does not allege nor do the facts support a Fifth Amendment taking.

## CONCLUSION

This court only has jurisdiction over the plaintiff's claims for a refund of its application fees. There is no jurisdiction over claims for other money damages because there is no waiver of sovereign immunity and no implied contract. This court also lacks jurisdiction over the plaintiff's tort claims. Accordingly, the defendant's motion to dismiss is DENIED with respect to El Dorado's claim for a refund of its application fees, and the motion is GRANTED as to all other claims in the complaint.

It is further ORDERED that the defendant's motion to stay discovery, filed January 25, 1993, is DENIED. The parties have until July 12, 1993 to complete discovery.

---

1. In count one of the complaint, paragraph VIII appears to state claims for negligence and fraud; paragraph X appears to contain a claim for fraud or negligent misrepresentation; paragraph XIV contains allegations of negligent and intentional torts. In count two, paragraph IV states claims for negligent, fraudulent and intentional torts and paragraph VI reiterates the same allegations.